## THE STATE *v.* LEWIS E. DAVIS.

### *Murder—Malice—Drunkenness as a Defence.*

Where the party killing the other, did it with a deadly instrument, or by the use of other deadly means, the law implies malice.

Anything which shows that the fatal shot fired was the result of a purpose, conceived though it may have been but a moment before, satisfies the requirement of the law for malice aforethought, as much as if it were done under the influence of an old enmity.

Drunkenness is no excuse for crime whether the subject of it knew what he was doing at the time or not; but where *mania a potu* has resulted from long continued intemperance and the accused party can show that the crime was committed when under the influence of that disease, he must be acquitted as for insanity from any other cause.

The fact that the accused was actually drunk at the time he committed the homicide will not reduce the offence from murder of the first degree to murder of the second degree unless the jury be satisfied that he was, from that cause, unable to know what he was about; but if so satisfied, the homicide is reduced to murder of the second degree.

( *New Castle, November, 1885.* )

INDICTMENT for murder.

*John H. Paynter,* Attorney General, for the State.

*Levi C. Bird,* for the prisoner, asked the Court to charge the jury as follows :

That if the jury believe that the prisoner, at the time of firing the fatal shot, was so intoxicated, or in such a state of mind as would negative that thought, reflection and premeditation, which are the necessary ingredients of malice; or that he was at the time unable to distinguish right from wrong, then he cannot be convicted of murder in the first degree.

COMEGYS, C. J., charging the jury:

This case is admitted by the prisoner's counsel to be one of murder, and therefore it is necessary that I should say to you that, by our law, there are two degrees of that crime—murder of the first and murder of the second degree. The *first* is where one purposely kills another, with a deadly weapon, without excuse or justification, or being under the influence of a provocation proportioned to the act committed, which created a feeling of resentment he was powerless to resist  The *second* is where life is taken, in committing or attempting to commit a felonious act, or by conduct so reckless as to show that the actor has a heart regardless of social duty and fatally bent on mischief. Many examples of this might be given, but I will cite but two to you, as they will be sufficient: It is where one recklessly shoots or rides into a crowd, and some one is killed, or resists and kills a public officer acting at the time in the discharge of his duty.

These several murders, are in law, murders with malace aforethought. Malice is not grudge, or resentment, or vindictiveness against another alone; but is also the manifestation of a wicked, evil spirt, evoked upon the occasion of the act done. And in the absence of other proof of malice it will be sufficient to establish it—that the party killing the other, did it with a deadly instrument, or by the use of other deadly means. In such case, the law implies malice—that is, the wickedness and depravity of heart spoken of—and no other proof of any need be given by the State. There is then devolved on the prisoner the duty and burden of showing either that he was excusable in self defense, or defense of his habitation, or that he had what in law is allowed to mitigate the crime—that is outrageous provocation which overcame his feelings so completely that he could not avoid the act. This shows the absence of malice—wickedness—and though surely punishable, is not murder of either degree.

In deciding upon the case as one of murder of the first or second degree (for that, as I have said, is the question before you), you

must not suppose, although malice must by law be co-existent with the fact of killing, which is what is meant by malice afore-thought, that a feeling of enmity or revenge against the victim shall be shown to have existed before the fatal occasion ; but only that the act done was prompted by it. Any thing which shows that the shot fired in this case was the result of a purpose, conceived though it may have been but a moment before, satisfies the requirement of the law. For instance, when the defence of manslaughter is made for one indicted for murder, on the ground that the slaying was while the parties were fighting, this Court charged the jury that, as the accused had selected as the weapon that he used, that one among several then at hand which suited his purpose, such choice was evidence from which the jury were warranted in finding de-liberation, and therefore malice aforethought. The law is that, though no malice or wickedness of heart exists before the time of the fatal stroke, or shot, and yet it then arose prompting the act of homicide, it is as much malice aforethought, premeditated slaying, as if it were done under the influence of an old enmity.

Having disposed of the subject of malice, I will now deliver the mind of the Court to you upon the subject of the defence set up for the prisoner, that there could have been no malice in fact in this case, because the prisoner was so under the influence of liquor that he was incapable of understanding the nature and consequences of the act he did. We say to you therefore generally that drunken-ness is no excuse for crime whether the subject of it knew what he was doing at the time, or not. Why? Because the state of public intoxication alleged to exist here is itself a legal offence and is the act of the party setting up the defence; and it is a rule of law that a party shall not be allowed to take advantage of his own wrong. But where the disease of *mania-a-potu* has supervened from long continued intemperance, and a party charged with crime can show that it was committed when under the influence of that disease, he is entitled to be acquitted the same as any other insane man. This

is where drunkenness is, in a sense, an excuse for crime—where *mania-a-potu* has resulted, which is alcoholic insanity.

It is not pretended by the prisoner's counsel, that he was in any sense a victim of the insanity known as mania from drink, when he did the fatal act; but he contends that the prisoner cannot be convicted of murder of the first degree if he was too drunk at the time to know what he was about—because he argues that one in such condition is incapable of intending or premeditating anything; and, as there must be evidence of such premeditation to make murder of the first degree, the prisoner must be acquitted of that charge, as his offence is only that of murder of the second degree. We say to you, gentlemen, that in order to find him not guilty of murder of the first degree, which involves a condition of the mind capable of conceiving a purpose, you must be satisfied, as there was no provocation whatever for the prisoner's conduct, and the weapon used by him was a deadly one, that by reason of drunkenness then existing, he was not in a condition to know, and in fact did not know what he was about when he shot the deceased. The fact that the prisoner was actually drunk at the time, if that is satisfactorily proved to you, will not reduce the offence from murder of the first to murder of the second degree, unless you should be satisfied that he was, *from that cause*, unable to know what he was about. As the law presumes every one to be sane until the contrary appears, it devolved in this case upon the prisoner to satisfy your minds that when he shot his victim he was too drunk to know what he was doing. Has he done that; if not, he is guilty in manner and form as he stands indicted. If he has done so, then he is guilty of murder of the second degree. Of one or the other of these crimes he is, admittedly, guilty.

Verdict, murder second degree.